is in substantial respects such an inventory as those assignors were required to file. It clearly was the intention of the statute that the debtor should verify the inventory. Among the separately enumerated things to be contained in it is the affidavit of the debtor to its truth. In no sense as to the individual estate of Philip and Isaac Bear can their copartner Samuel Bear be deemed to have had any authority whatever to verify the inventory for them, and I see no escape from the conclusion that as to their individual estates the assignment became void at the end of the thirty days because the debtors did not file such an inventory as the law requires, nor, upon their omission to do so, did the assignee file, as he might have done, an inventory such as he was able to make out for them. I think, upon the authorities, that the substantial requirements of the statute in such a case must be complied with, or the assignment will be held to be necessarily fraudulent as against creditors. The requirements of the statute are for the security of creditors against secret and fraudulent assignments. Juliand v. Rathbone, 39 N. Y. 369. The fair construction of the statute is that, if the assignee does not within twenty days file an inventory substantially such as is described, the assignee may have 60 days' further time to make and file the same as well as he can, otherwise the assignment fails. If this assignment is void as to the individual estates of Isaac and Philip Bear, can it be sustained as to the firm property? It seems not. Firm creditors have an interest under the assignment in the possible surplus of the individual estates, and it is impossible to uphold the instrument in part and avoid it in part, the rule being that where a statute in terms declares a deed or instrument void on account of some illegal or fraudulent provision contained therein, or some vicious element or fault in it, then it is void in toto, because the legislature has seen fit to make it so. O'Neil v. Salmon, 25 How. Pr. 255, and cases cited. The levies made, therefore, between the expiration of the thirty days and the filing of the original petition in bankruptcy, gave the execution creditor valid liens on the property.

It is also claimed that the adjudication in bankruptcy does not relate back to the filing of the original petition in bankruptcy, but only to the time of filing the ancillary petition, because it is said that one of the original petitioning creditors did not sign the petition, the name of the creditor in the petition being "A. Fleischmann & Co.," and the signature being "A. Fleischmann." There is nothing in the point. A. Fleischmann & Co., with the other petitioning creditors, appeared by their attorney. They were the parties petitioning, and, even if A. Fleischmann & Co. had not signed at all, it would be, at most, a mere irregularity in practice, not affecting the jurisdiction. The statute does not in terms require the petitioners all to sign in order to give the court jurisdiction to entertain the petition. Therefore, the levy after the filing of the petition gave no lien. As to the first levy, which was within the twenty days on the authority of Croughwell's Case, ut supra, the assignment was then operative, and there was no interest in the debtor to give effect to the levy.

## Case No. 1,178.

In re BEAR et al.

[1 Cent. Law J. 607; 11 N. B. R. (1875,) 46.]

District Court, S. D. Mississippi.

BANKRUPTCY—INSURANCE POLICY—RIGHTS OF WIFE AND ASSIGNEE.

[1. Where the husband insures his life for the benefit of his wife, the legal title to the policy is in her; so that, upon his becoming bankrupt, it is not necessary that he should surrender such policy, or list it in his schedule of assets.]

[2. Payments of premiums thereon by the husband after he becomes insolvent, however, constitute a fraud on his creditors, whether made with fraudulent intent or not, to the extent that the assignee in bankruptcy is entitled to recover from the wife out of the proceeds of the policy, when it shall have been paid. the amount so advanced by the husband, with interest.]

[3. This claim on the part of the assignee, when its amount is ascertained, may be sold by him, and will pass to the purchaser a contingent right in the proceeds of the policy.]

[In bankruptcy. In the matter of the bankruptcy of Bear and Steinberg.]

Harris & George, for creditors.
Wharton & Johnstons, for bankrupts.

HILL, District Judge. This case is now submitted upon the exception of the creditors to the schedules of the bankrupts, upon the ground that they do not contain, and the bankrupts have not surrendered therein, a life policy taken out by each for the benefit of his wife. The question, upon examination, I find one of no little difficulty, and have postponed its decision for the purpose of obtaining all the light on the question attainable. But as it may be important to the parties in interest to have it settled without further postponement, I proceed to its examination. It is admitted that the policies are upon the lives of the husbands for the benefit of their wives; this being so, the question is, to whom do they belong?. I am inclined to the opinion that the legal title is in the wife, and not the husband. The value of the policy depends upon the payment of the premiums as they fall due. This may be done by the wife out of her own means, or may be advanced by a friend other than her husband; if advanced by the husband it is but an advancement, settlement, or provision made by him for her benefit out of his estate, which, if solvent at the time the advance was made, he could do without any violation of the rights of creditors—provided

it was reasonable in amount when considered in connection with his estate and liabilities—and certainly would be valid as to subsequent creditors; indeed, a suitable provision for one's household is not only not condemned, but sanctioned by law, both human and divine. I am of opinion that the title to a life-policy of the kind mentioned, both legal and equitable, is in the wife, and cannot be controlled or assigned by the husband. It is otherwise when taken out by him for his own benefit, or for the benefit of his estate, as in the case of Catchings v. Manlove, 10 George, [39 Miss.] 655, cited by creditors' counsel; hence the necessity of the assignment to his wife and children in that case, which, being made when the husband was insolvent, was properly declared void as against his creditors, but was valid as against other parties. Whilst I am satisfied the policies in the case now submitted belong to the wives of the bankrupts, and are not subject to be surrendered by the bankrupts, yet any payments which they may have made out of either their individual or partnership effects, after they became insolvent, were a fraud whether so intended or not, so far as to entitle the assignee to recover from the wife the amount advanced, with interest, out of the policy when it shall have been paid, and this claim when ascertained may be sold by the assignee, and will pass the contingent right to the purchaser. The Case of Erben, [Case No. 1,315,] referred to by counsel, was a claim upon the part of the bankrupt, for whatever interest he had in the policy to be set off as exempt under the statute of Pennsylvania, which was allowed, which, if it was property in the sense of the statute, was properly set off, and did not raise the question as between the creditors and right of the wife, and is not authority upon the question now presented. The other cases referred to by the distinguished and able counsel of the creditors, will be found when closely examined, I am of opinion, not in conflict with the conclusion above stated. The register will take proof as to the amount paid by the bankrupts, if any, after they became insolvent, and out of that fund paid, which claim, when ascertained, will be sold for cash by the assignee, as provided for the sale of other debts or choses in action.

=====

## Case No. 1,179.

### BEAR v. LUSE.

[6 Sawy. 148; 12 Chi. Leg. News, 130.][1]

Circuit Court, D. Oregon. Dec. 10, 1879.

PUBLIC LANDS — TOWN SITE — SUIT TO AFFECT A PATENT—QUESTIONS OF FACT—DECISIONS OF THE LAND DEPARTMENT—QUESTIONS OF LAW.

1. The occupation of a tract of land as a town site for the purposes of business or trade, which is afterwards abandoned, does not impress upon the locality the character or quality of a town site, so that the same can not be taken up and held under the donation act as unoccupied public land.

2. Equity does not have jurisdiction to affect a patent except upon the ground of an antecedent equity in the plaintiff which was disregarded in the issuing thereof, and therefore a party who claims to have settled upon a tract of public land subsequent to the settlement and entry thereof by another who has received the patent for the same, upon the ground that the settlement and entry of the patentee were illegal and void, can not maintain a suit to set aside such patent or charge the patentee as his trustee of the premises.

3. Questions of fact decided in the land department are not subject to review by the courts, except for fraud or mistake other than an error of judgment; and where there is a contest in such department between one who claims to be a settler upon a portion of the public land, to cancel the entry of a prior settler upon the same land, the decision therein precludes further inquiry by the parties into any question of fact which might properly have been made in such contest, the same as if it had been actually so made and considered.

4. Whether a settler under the donation act upon unsurveyed lands could commute his residence thereon, under section 1 of the acts of February 14, 1853, and July 17, 1854, by the payment of one dollar and twenty-five cents an acre therefor, is a question of law, and therefore the decision of the land department thereon may be reviewed by this court upon the suit of a party having an equity in the premises prior to such entry, but not otherwise, except in a suit by the United States to cancel the patent issued upon such entry.

[In equity. Bill by John Bear against H. H. Luse to enjoin certain proceedings at law on the part of Luse to recover possession of certain lots in Marshfield. Bill dismissed.

[Bills were also filed against the same defendant, for the same purpose, by W. F. Deubmer, George Wolf, Frederick Timmerman, William G. Webster, A. Lobree, C. B. Golden, and William Temple. By stipulation the case of Bear against Luse was argued and submitted upon the understanding that the final determination therein should be followed in the other cases. These bills were also dismissed.]

Walter W. Thayer and William G. Webster, for plaintiff.

John Burnett and R. R. Strahan, for defendant.

Before FIELD, Circuit Justice, and DEADY, District Judge.

DEADY, District Judge. In the spring of 1877, H. H. Luse commenced actions at law in the circuit court for the county of Coos against a number of persons to recover the possession of certain lots in the town of Marshfield, in said county, the same being parts of lots 3 and 4 of section 26, in township 25 south, of range 13 west of the Wallamet meridian. Each of the defendants in these actions filed a complaint in equity in the nature of a cross bill, under section 377 of the Oregon Civil Code, against Luse, to stay the proceedings therein, and praying

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 12 Chi. Leg. News, 130, contains only a partial report.]